**M&T MORTGAGE CORP., Plaintiff**
**v.**
**C'ARON WHITE-HAMILTON, Defendant**

Civ. No. 1998-014

District Court of the Virgin Islands

Division of St. Thomas and St. John

April 26, 1999

CHAD C. MESSIER, ESQ., St. Thomas, U.S.V.I., *for plaintiff*

PEDRO K. WILLIAMS, ESQ., St. Thomas, U.S.V.I., *for defendant*

MOORE, *Chief Judge*

### MEMORANDUM

Defendant C'Aron White-Hamilton ["White-Hamilton"] has moved to dismiss plaintiff M&T Mortgage Corp.'s ["M&T Mortgage"] foreclosure action against her, arguing that, under V.I. CODE ANN. tit. 13, § 533(a), the plaintiff cannot bring suit because it has not paid its annual Territorial franchise tax. On January 22, 1999, the Court held a hearing on this matter and denied White-Hamilton's motion to dismiss, assessing costs and attorney fees incurred by M&T Mortgage in the defense of this motion against the defendant's attorney, Pedro K. Williams. This opinion memorializes the Court's findings and conclusions announced at that hearing.

## FACTUAL SUMMARY

On November 30, 1995, White-Hamilton executed and delivered to Fidelity Union Mortgage Corporation Virgin Islands ["Fidelity"] a mortgage and note in the amount of $184,697.24, secured by Parcel No. 57-3, Estate Fortuna, No. 8 West End Quarter, St. Thomas. On that same day, Fidelity assigned the mortgage and note to M&T Mortgage, a New York corporation that purchases mortgages on the secondary mortgage market.

M&T Mortgage has no local representatives, offices, or agents located in the Virgin Islands. Out of the 154,570 mortgages serviced by M&T Mortgage in July 1998, only 34 mortgages originated in the Territory. It has not registered with the Lieutenant Governor's Office or paid any Territorial franchise tax.

After White-Hamilton defaulted on the note and mortgage, M&T Mortgage brought a foreclosure action in this Court,[1] requesting judgment for principal balance, insurance, inspection fees, taxes, late charges and accrued interest. White-Hamilton filed an answer *pro se*, raising several affirmative defenses and counterclaims. She later procured the services of attorney Pedro K. Williams, and filed the present motion to dismiss.

## DISCUSSION

This court has jurisdiction over the plaintiff's diversity suit under 28 U.S.C. § 1332. In the motion to dismiss, White-Hamilton contends that M&T Mortgage cannot bring suit against her because it has not paid the annual Virgin Islands franchise tax. This argument assumes, of course, that M&T Mortgage is subject to that tax. As the court has explained, this assumption is incorrect.

Under the Virgin Islands Corporation Franchise Tax Act ["CFTA"], franchise taxes are due by every local or foreign corporation "qualified to do or doing business in the Virgin

---

[1] In October, 1996, M&T Mortgage brought a foreclosure action against Hamilton in the Territorial Court of the Virgin Islands. (See Compl., Civ. No. 790/1996.) After the Territorial Court denied its motion for summary judgment, the plaintiff withdrew its action from that court and instituted suit in this court.

Islands." 13 V.I.C. § 533(a) (emphasis added).[2] CFTA and the general corporate statutes and caselaw of the Virgin Islands establish that M&T Mortgage is not liable for franchise taxes under this provision.

CFTA states that "a foreign corporation shall be deemed to be doing business in the United States Virgin Islands if it maintains an office in the [Territory]." 13 V.I.C. § 530(b). M&T Mortgage does not maintain an office in the Virgin Islands, but this fact alone is not dispositive because section 530(b)'s definition of "doing business" is not all-inclusive.

The phrase "doing business" refers to "activities which constitute a substantial part of the company's ordinary or customary business." *See American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.*, 407 F. Supp. 164, 188, 12 V.I. 325, 367 (D.V.I. 1975). Out of the 154,570 mortgages serviced by M&T Mortgage in July 1998, when the defendant's attorney made his appearance in this case, only 34 mortgages originated in the Virgin Islands. That is the extent of the defendant's business contacts with the Virgin Islands. With no evidence before the court to the contrary, it does not appear that M&T Mortgage's servicing of such a small number of mortgages could possibly be construed as "doing business" in the Virgin Islands. *See Government of the Virgin Islands v. Legend Resorts*, 1998 V.I. LEXIS 12, Civ. No. 612/1996 (Terr. Ct. filed May 28, 1998) (holding that mortgage servicing and enforcement are limited activities that do not constitute "doing business").

Since M&T Mortgage is not "doing business" in the Virgin Islands, the question arises whether it is "qualified to do business" here. CFTA does not define the phrase, "qualified to do business," but another section of Title 13, Virgin Islands Code provides that certain companies must qualify to do business in the Virgin Islands:

> No corporation created by the laws of any foreign country or any state of the United States, or the laws of

---

[2] The Virgin Islands Legislature inserted this phrase in a significant 1994 amendment to 13 V.I.C. § 533. Due to an apparent oversight by the publisher, however, this amendment was not incorporated into section 533 in the 1998 edition of the *Virgin Islands Code*. Instead, it appears in the legislative history section following the statute.

the United States, shall do any business in the United States Virgin Islands through or by branch offices, agents or representatives located in the United States Virgin Islands until it shall have filed in the office of the Lieutenant Governor a certified copy of its charter . . . .

13 V.I.C. § 401(a) ["qualification statute"]. Hence, it is apparent that the Legislature intended that only foreign corporations that "do any business . . . *through or by branch offices, agents or representatives located in the United States Virgin Islands*" would have to qualify to transact business here. See *Standex Co. v. John*, 27 V.I. 157, 159 (Terr. Ct. 1992). M&T Mortgage has no office, agents, or representatives located in the Virgin Islands, and has never registered with the Lieutenant Governor's office in order to conduct business within the Territory. Thus, it is not liable for payment of franchise taxes as a "qualified" business under 13 V.I.C. § 533(a). *See Standex*, 27 V.I. at 160.

■ Since M&T Mortgage was not required to pay the franchise tax as a company registered with the Lieutenant Governor's office or transacting substantial business in the Territory, White-Hamilton's motion to dismiss this suit for non-payment of that tax must be denied. At present, M&T Mortgage is not subject to the statutory bar on suits by delinquent corporations.

As the Court observed at the hearing on January 22, 1999, White-Hamilton's counsel, Pedro K. Williams ["Williams"], failed to research adequately the factual or legal premises of the motion to dismiss before filing it, or in response to the arguments and authority in M&T Mortgage's opposition. Although Williams filed three different copies of White-Hamilton's motion to dismiss with the Clerk,[3] he never informed the Court whether M&T Mortgage transacted business in the Virgin Islands or was registered to do so. Williams admitted at the hearing that, when he prepared White-Hamilton's motion to dismiss, he had misread or misinterpreted CFTA to state that any foreign corporation must pay the Virgin

---

[3] The Court struck one of White-Hamilton's motions to dismiss for failure to comply with LRCi 56.1. (*See* Order of Nov. 12, 1998.)

Islands franchise tax in order to bring suit.[4] Yet Williams had notice of his error after December 10, 1998, when M&T Mortgage's opposition cited the statute correctly, with accompanying case authority, and adduced facts showing that only 0.02% of the mortgages serviced by M&T Mortgage were on Virgin Islands properties.

Since the burden of production and persuasion lay with his client, Williams at the very least was obligated to respond to M&T Mortgage's opposition by withdrawing White-Hamilton's motion and asking for discovery, or developing legal arguments upon which the Court might grant the motion. But he did neither. Rather, Williams signed and filed a thirteen-sentence reply in which he complained that "all of the pertinent information [is] in the hands of plaintiff," and made the unexplained assertion that "the cases cited by plaintiff are clearly distinguishable from [the case] at bar." (*See* Def.'s Reply at 1.)

The test for determining the propriety of an attorney's conduct under Rule 11 of the Federal Rules of Civil Procedure is "reasonableness under the circumstances." *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). In light of what Mr. Williams knew when he replied to M&T Mortgage's opposition papers, the Court finds that his response was unreasonable under Rule 11. After receiving the plaintiff's opposition, Williams was put on notice that he had no basis to rely on CFTA, and that the motion to dismiss contained no facts or authority in support of the claim that M&T Mortgage was barred from maintaining an action for failure to pay franchise taxes to the government. Yet Williams never cured these faults. At best, this was professional negligence; at worst, it was incompetence.

■ Rule 11 affords the Court the remedy of financial sanctions to "deter repetition of such conduct or comparable conduct by others similarly situated." *See* FED. R. CIV. P. 11(c)(2). The record indicates that responsibility for the improper response lies with Williams

---

[4] Although the pertinent amendment to CFTA does not appear in the text of the statute itself due to a publisher's oversight, clear reference is made to the passage in the legislative history following 13 V.I.C. § 533(a), the very section that White-Hamilton's motion invoked. *See supra*, note 2.

rather than his client, and Williams has not persuaded the Court that sanctions should not be imposed for frivolously maintaining the motion to dismiss. Consequently, the Court will grant M&T Mortgage's request for sanctions against Pedro K. Williams, Esquire, representing attorney's fees reasonably incurred in the defense of White-Hamilton's motion to dismiss after the opposition was submitted. An appropriate Order shall issue.

ENTERED this 26th day of April, 1999.